Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8023 | **DATE** | 8/27/2004 |
| **CASE TITLE** | Goldberg vs. Holstein | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Appeal from Bankruptcy Court

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is the Appellant's appeal from the United States Bankruptcy Court of the Northern District of Illinois' granting of summary judgment. Appellant's appeal is denied. The Bankruptcy Court's decision is affirmed. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 3 1 2004 | |
| | Notified counsel by telephone. | | date docketed | 11 |
| ✔ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY M. GOLDBERG & ASSOCIATES, LTD. | )<br>)<br>) |
| Plaintiff-Appellee, | )<br>) |
| | ) No. 03 C 8023 |
| v. | )<br>) HONORABLE CHARLES R. NORGLE |
| ROBERT A HOLSTEIN | )<br>)<br>) |
| Defendant-Appellant. | ) |

AUG 3 1 2004

## OPINION AND ORDER

**Charles R. Norgle, District Judge.**

Before the court is an appeal from the United States Bankruptcy Court of the Northern District of Illinois by the Appellant, Robert A. Holstein ("Holstein"). Holstein is appealing the bankruptcy court's ruling which granted the Appellee's, Jeffrey M. Goldberg & Associates, Ltd. ("Goldberg"), motion for summary judgement and denied Holstein's motion for summary judgment. For the following reasons, the bankruptcy court's decision granting summary judgment in favor of Goldberg is affirmed.

## I. BACKGROUND

Holstein was originally a partner in the now defunct law firm of Holstein, Mack and Klein. In 1995, Holstein, Mack and Klein ("HMK") was embroiled in a long and highly contested class action, products liability case concerning the Norplant contraceptive device. HMK represented approximately 2,500 plaintiffs in both state and federal courts. As the litigation continued to drag out, HMK's expenses increased as did their debt. By June 1995 the firm had invested more than

three million dollars in the Norplant litigation. In an attempt to lessen their financial burdens, HMK entered into an agreement with Goldberg to serve as co-counsel in the Norplant litigation. Goldberg provided HMK with one million dollars for which in return he would receive 30% of the expected fees in the litigation. Although the co-counsel agreement never mentioned how the one million dollars was to be spent by HMK, Goldberg proceeded under the assumption that the money would be used to continue litigating the case. In fact, HMK used the money to pay American National Bank ("ANB"), their primary lender, a portion of the debt that was owed; and various other outstanding debts.

In September 1996, the Circuit Court of Cook County decertified the Norplant class action suit in Illinois. Additionally, there were adverse rulings in the federal courts that prevented recovery. All in all, Goldberg invested over 1.2 million dollars in the litigation and failed to recover any of that money.

The end of the Norplant litigation spelled the end for HMK. ANB filed two actions in Circuit Court: one against HMK for fulfillment of their promissory notes, and one against Holstein for his personal guarantee of the debt. By November 1996, HMK no longer existed. The partners each took their respective clients and cases, closing the office. Holstein began a new firm called Robert A. Holstein & Associates, P.C.

Robert A. Holstein & Associates, P.C. operated for approximately one year, at which time Holstein transferred most of his clients, cases and assets to Barbra Stackler ("Stackler"), an attorney with whom he was romantically linked. Additionally, Holstein transferred all of his personal assets to Stackler, claiming that the transfer of assets was to repay various loans that Stackler had provided

him. Holstein's transfer of personal assets later was deemed to be fraudulent by the Circuit Court. Holstein never appealed the Circuit Court's decision, making it a final order.

On September 30, 1997, HMK filed for bankruptcy. Approximately two weeks later, two former equity partners at HMK personally filed for bankruptcy protection, Bruce J Goodhart and Jewel N. Klien. Goldberg filed an adversary complaint against Goodhart seeking to have its debt held non-dischargeable pursuant to 11 U.S.C. §523(a)(2) and § 727(a). Goldberg's adversary proceeding against Goodhart was settled. The settlement agreement contained a mutual release of Goodhart's and Goldberg's claims against one another for a judgment in the amount of $250,000.00.

Meanwhile, ANB was attempting to recover a monetary judgment imposed against Holstein, in the amount of $748,006.39. On September 13, 1999, ANB filed a complaint in the Circuit Court of Cook County in an attempt to recover on the judgment. The case was set for trial on June 21, 2000. On June 19, 2000, two days prior to trial, Holstein filed a bankruptcy petition seeking relief under Chapter 7. Holstein submitted a schedule of unsecured creditors that listed Goldberg as a creditor, characterizing Goldberg's claims as disputed. Holstein described Goldberg's claims as arising from a trade contract dispute. Upon filing for bankruptcy Holstein failed to disclose his fraudulent transfer of assets to Stackler. Goldberg filed an adversary complaint against Holstein, objecting to Holstein's discharge of the purported debt pusuant to 11 U.S.C. § 727(a). Both parties filed motions for summary judgment. The bankruptcy court ruled in favor of Goldberg, finding him to be a creditor as defined by 11 U.S.C. § 101(10)(A), that Goldberg had a cognizable claim as defined by 11 U.S.C. 101(5)(A), and Holstein's debt to be non-dischargeable pursuant to 11 U.S.C. § 727(a). Holstein has appealed from this decision.

On November 12, 2003, Holstein filed an appeal from the bankruptcy court's ruling. On appeal Holstein raises essentially two issues: 1) whether the bankruptcy court erred in granting Goldberg's motion for summary judgment; and 2) whether the bankruptcy court erred in denying Holstein's motion for summary judgment without determining the issue of whether Goldberg had a valid claim. The appeal is now fully briefed and ripe for ruling.

## II. DISCUSSION

On appeal from an order of the bankruptcy court granting summary judgment, the district court applies a *de novo* standard of review. Furthermore, "[t]he bankruptcy court's determinations are reviewed for clear error and legal conclusions de novo." Village of San Jose v. McWilliams, 284 F.3d 785, 790 (7th Cir. 2002)(citing Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network), 151 F.3d 605, 607 (7th Cir. 1998)); see also Rule 8013 of the Federal Rule of Bankruptcy Procedure. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)(quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). "Determinations of intent are particularly for the trier of fact to make and should not be reversed except in the most extreme cases." In re Reitz, 69 B.R. 192, 195 (N.D.Ill, 1986) (citing, In re Neis, 723 F.2d 584, 588-89 (7th Cir. 1983)).

In this instance, the record clearly shows that the bankruptcy court did not abuse its discretion in granting Goldberg's motion for summary judgment and denying Holstein's motion for summary judgment. Before the Bankruptcy Court were three issues: 1) whether Goldberg is a creditor 2) whether Goldberg's purported debt is non-dischargeable and 3) whether Holstein should be entitled

4

to a decision on the merits of whether Goldstein has a valid claim pursuant to 11 U.S.C. §727(a)(2)(A). The bankruptcy court found for Goldberg on all three issues.

Holstein claims to be asserting essentially the same three issues on appeal. Upon a review of Holstein's assertions on appeal he is merely asserting that the bankruptcy court should have determined the merits of Goldberg's claims before determining if the debt was dischargeable and that he did not fraudulently conceal his assets upon filing for bankruptcy. The court will first review Holsteins assertions that he fully disclosed all of his assets upon filing for bankruptcy and then review his assertion that the bankruptcy court should have determined whether or not Goldberg had a valid claim.

### A.  Non-Discharge of the Purported Debt

The bankruptcy court determined that Holstein did not properly disclose all of his assets at the time he filed for bankruptcy. The court also found that Holstein had fraudulently transferred assets to Stackler in an effort to defraud creditors, prior to the filing for bankruptcy and later attempted to conceal those transfers during the bankruptcy. Therefore, pursuant to § 727(a), Goldberg, a creditor with a cognizable claim, properly objected to the discharge of the debt.

To succeed on a §727(a)(2)(A) claim, the objecting creditor must prove by a preponderance of the evidence: (1) that the act complained of was done within one year prior to the filing date of petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate. See Lee Supply Corp. v. Agnew, (In re Agnew), 818 F.2d 1284, 1287 (7th Cir. 1987) (citing 4 Collier on Bankruptcy, para. 727.02[1][b] (15th ed. 1986)).

"Concealment is a continuing event and under the doctrine of 'continuing concealment,' a concealment that originated outside the one year limitation period is within the reach of §727(a)(2)(A) if the concealment continued on into the year preceding the filing coupled with the requisite intent." Kaler v. Craig, 195 B.R. 443, 449 (Bankr. D.N.D. 1996)(citing Rosen v. Bezner, 996 F.2d 1527 (3d Cir. 1993); (In re Olivier, 819 F.2d 550 (5th Cir. 1987)). "Under the doctrine of 'continuing concealment,' a concealment with the requisite intent will be found during the year before bankruptcy, even though the initial concealment occurred earlier, if the debtor allowed the property to remain concealed into the critical year." Rosen, 996 F.2d at 1531; see also Keeney, 227 F.3d at 684, Hughes v. Larson (In re Larson), 122 F.3d 1327, 1240 (9th Cir. 1997); Kauffman, 675 F.2d at 128; McNichols v. Shala (In re Shala), 251 B.R. 710, 713-14 (N.D.Ill. 2000). The doctrine recognizes that the failure to reveal property previously concealed can be "considered culpable conduct during the year before bankruptcy warranting a denial of discharge." Rosen, 996 F.2d at 1527; Hayes, 229 B.R. at 259-60.

Holstein's actions were previously determined to be fraudulent by the Illinois Circuit Court, therefore the only determination that the bankruptcy court needed to make was whether or not Holstein's actions fell within the one year time limit of filing for bankruptcy court. The bankruptcy court determined that Holstein attempted to conceal his assets not only prior to filing for bankruptcy but also during the bankruptcy proceedings.

Holstein does not dispute any of the bankruptcy court's findings. Holstein merely asserts that he did disclose all the necessary information in his asset disclosure statements. Holstein claims that by notifying the bankruptcy court of the pending litigation between ANB and himself, that there was a full and adequate disclosure.

The mere notification of pending litigation without disclosing any of the details in the litigation in which a party is seeking to discover assets is not complete disclosure as contemplated by the Bankruptcy Code. The whole purpose of the ANB litigation was to determine what assets Holstein possessed and what assets he had fraudulently transferred and concealed in an attempt to avoid payment of his debts. Both the Illinois Circuit Court and the Bankruptcy Court found that Holstein fraudulently attempted to transfer and conceal his assets from prospective creditors. The Circuit Court deemed Holstein's explanations of the asset transfers to be "inherently unbelievable." The Bankruptcy Court found Holstein's assertions to be preposterous. This court finds Holstein's continued assertion that he completely disclosed all pertinent information upon filling for bankruptcy not only disingenuous but bordering on sanctionable.

Holstein did not disclose his fraudulent transfer of interest in Bloomfield Hills, Vic Tanney Partnership. Holstein did not disclose his fraudulent transfer of interest in the Wilmette Office Court Limited Partnership. Holstein did not disclose his fraudulent transfer of his 40 percent interest in the stock of Cemetery Enterprises Inc. Nor, did Holstein disclose his fraudulent transfer of stock in Carriage Services Inc. Holstein's conduct overall has been less than candid.

"The purpose of the [Bankruptcy] Code is to provide equitable distribution of the debtor's assets to the creditors and to 'relieve the **honest debtor** from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortune.'" Village of San Jose v. McWilliams, 284 F.3d 785, 790 (7th Cir. 2002) (quoting Williams v. United States Fid. & Guar. Co., 236 U.S. 549, 554-55 (1915)) (emphasis added). "But in the same breath that we have invoked this 'fresh start' policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the

7

'honest but unfortunate debtor.'" Grogan v. Gardner, 498 U.S. 279, 286-87 (1991)(quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). The court in this instance therefore applies the maxim "he who seeks equity must do equity." Holstein has failed to be straightforward and forthright with his disclosures and therefore the court affirms the bankruptcy courts determination with regard to the non-dischargability of his debts.

**B.      Determination on the merits of the claim**

The bankruptcy court refused to address the merits of Goldberg's claims when it issued the ruling on non-dischargability. The bankruptcy court reviewed Goldberg's objections to discharge, found that Goldberg was a creditor as defined by § 101(10)(a), Holstein himself identified Goldberg as an unsecured creditor upon filing for bankruptcy, and that he had a claim as broadly defined by § 101(5)(A). Additionally, the bankruptcy court found that Goldberg had a cognizable claim as broadly defined by § 101(5)(A). The bankruptcy court then proceeded to determine whether or not the purported debt was non-dischargable pursuant to § 727(a)(2)(A).

Upon making all of the requisite findings, the Bankruptcy Court found Goldberg's claims to be non-dischargable. The finding that a debt is non-dischargable allows the parties to then litigate the matter in a separate proceedings, in a forum with the requisite subject matter jurisdiction. The bankruptcy courts decision does not in any way deprive Holstein of his right to litigate the veracity of Goldberg's claim. As stated by the bankruptcy court:

> "[T]his result [does not] deprive Holstein of an opportunity to contest Goldberg's claim. This court's refusal to address the merits of Goldberg's claim means only that the merits will not be decided in bankruptcy court. If a creditor holding a disputed claim prevails on its section 727 objection to discharge the automatic stay will lift, see 1 R. Ginsberg,et al.,Ginsberg & Martin on Bankruptcy P 11.01[B] at 11-12 (4th ed. 2003), and the creditor can pursue his claims elsewhere. Here, this court's summary judgment decision in Goldberg's favor will lift the stay, and Goldberg will

8

be able to bring its claims (which are, after all, state law claims) in Illinois state court. Holstein can raise his arguments there."

Holstein v. Goldberg, 299 B.R. 211, 225 (Bankr. N.D. Ill. 2003).

On appeal, Holstein asserts that the bankruptcy court's decision and the cases used in support thereof are incorrect. Holstein asserts the in actuality, the cases cited by the bankruptcy court in support of its determination favor his position and that therefore the court should have ruled in his favor on summary judgment. Holstein fails to cite any additional case law or precedent for his position. Upon reviewing de novo, the cases which the bankruptcy court cited, Goldberg cited, and Holstein has cited the court affirms the bankruptcy courts decision.

### III. CONCLUSION

For the above stated reasons, the bankruptcy court's decision granting summary judgment in favor of Goldberg and denying Holsteins motion for summary judgment is affirmed.

IT IS SO ORDERED.

ENTER:

*Charles R. Norgle*

CHARLES RONALD NORGLE, District Judge

DATED: 8/27/04